**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALI KUCUK, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>KIRAT GAS INC. d/b/a SUNOCO GAS STATION, *et al.*,<br><br>Defendants. | Civil Action No. 25-669 (MAS) (JTQ)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Ali Kucuk's ("Kucuk" or "Plaintiff") unopposed Motion for Default Judgment against Defendants Kirat Gas Inc. d/b/a Sunoco Gas Station ("Kirat"), Berkshire Valley Gas Inc. d/b/a Lukoil ("Berkshire" and together with Kirat, the "Corporate Defendants"), and Charanjot Singh ("Singh" and collectively with the Corporate Defendants, "Defendants"). (ECF No. 16.) The Court has carefully considered Plaintiff's submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's Motion for Default Judgment is granted.

# I. BACKGROUND[1]

## A. Factual Background

Plaintiff brings this action against Defendants "seek[ing] to recover unpaid minimum overtime wages, statutory and liquidated damages, and other monies" pursuant to the Fair Labor Standards Act (the "FLSA") and New Jersey Wage and Hour Law (the "NJWHL"). (Compl. ¶ 1, ECF No. 1.)

Kirat is a New Jersey corporation formed in November 2020 that is licensed to do business as a retail store in Riverdale, New Jersey. (*Id.* ¶¶ 10-11.) Berkshire is a New Jersey corporation formed in January 2024 that is also licensed to do business as a retail store in Princeton, New Jersey. (*Id.* ¶¶ 17-18.) Singh is a New Jersey resident who owns the Corporate Defendants and who hired Plaintiff. (*Id.* ¶¶ 24-26.) Singh also controlled the Corporate Defendants' operations and employment decisions and was Plaintiff's employer. (*Id.* ¶¶ 28-29.) Defendants had approximately three employees in total. (*Id.* ¶ 39.)

Plaintiff worked for Defendants from approximately November 1, 2022, through September 30, 2024. (*Id.* ¶¶ 7, 41.) During that period, Plaintiff's title was "Gas Pump," and he performed several duties, including pumping gas, cleaning, stocking, operating the cash register, cleaning bathrooms, purchasing items for Defendants' businesses, and organizing groceries. (*Id.* ¶¶ 8, 42-47.) He worked seven days per week. (*Id.* ¶ 48.) His regular schedule was approximately 7:00 a.m. to 8:00 p.m. Monday through Friday and approximately 10:00 a.m. to 8:00 p.m. on Saturday and Sunday. (*Id.*)

---

[1] For the purposes of this unopposed default judgment motion, "the factual allegations of the [C]omplaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Defendants paid Kucuk approximately $605.20 per week by check and approximately $585 per week in cash, for total weekly compensation of approximately $1,190.20. (*Id.* ¶ 49.) Kucuk alleges that his weekly compensation did not vary based on the number of hours he worked, and Defendants did not pay him one and one-half times the regular rate for hours worked in excess of forty hours per week. (*Id.* ¶¶ 50-53.) Kucuk further alleges that Defendants did not maintain accurate records of his hours worked, arrival and departure times, regular wages, or overtime wages. (*Id.* ¶¶ 54-58.) Defendants likewise failed to provide him with records of his hours, a notice identifying his rate of pay, or required wage statements. (*Id.* ¶¶ 59-62.)

**B. Procedural Background**

Kucuk commenced this action against Defendants on January 22, 2025, asserting seven claims under the FLSA and NJWHL. (Compl. ¶¶ 1, 70-105.) Berkshire was served with the Summons and Complaint on January 28, 2025; Kirat was served on February 5, 2025; and Singh was served on February 7, 2025. (Summons Returned Executed, ECF Nos. 4-6.) Plaintiff filed proofs of service on March 6, 2025. (*Id.*) Plaintiff and Kirat's counsel subsequently entered a stipulation granting Kirat an additional fourteen days to answer and providing that Kirat waived any defenses based on service of process or personal jurisdiction.[2] (Stip., ECF No. 7.) The Court approved the stipulation on May 19, 2025. (Stip. & Order, ECF No. 8.) None of the Defendants answered, moved, or otherwise responded to the Complaint. (*See* Pl.'s Moving Br. 1, ECF No. 17.) Kucuk thereafter requested that the Clerk enter default against Defendants. (Request for Default, ECF No. 11.) On November 12, 2025, the Clerk entered default against Defendants for failure to

---

[2] The Stipulation refers to "Defendants" without identifying specific named parties. (*See generally* Stip.) Counsel who signed the Stipulation as "Defendant's Attorney" later entered an appearance only on behalf of Kirat (*see generally* Not. of Appearance, ECF No. 9), and as such, the Court finds that the Stipulation is one entered into between Plaintiff and Kirat only.

plead or otherwise defend. On April 29, 2026, Kucuk filed the present unopposed Motion for Default Judgment. (Mot. for Default J., ECF No. 16.)

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 55[3] authorizes the Court to enter default judgment "against a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing Fed. R. Civ. P. 55(b)(2)); *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three analyses guide the Court's discretion. *See Victory's Dawn, Inc. v. Clemons*, No. 21-9744, 2022 WL 3402491, at *2 (D.N.J. Aug. 12, 2022). *First*, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the Court must ensure that "the unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the complaint, except legal conclusions and allegations regarding damages. *See Pepe*, 431 F.3d at 165, 165 n.6 (citing *Corbin*, 908 F.2d at 1149). *Third*, the Court must determine whether default judgment is appropriate by

---

[3] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Loc. 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

## III. DISCUSSION

### A. Jurisdiction

The Court must first address the threshold issue of whether it has subject matter jurisdiction and personal jurisdiction over Defendants. *See Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010). This Court has subject matter jurisdiction over this matter because it presents a federal question under the FLSA. *See* 28 U.S.C. § 1331; 29 U.S.C. § 216(b). The Court additionally has supplemental jurisdiction over Plaintiff's NJWHL claims. *See* 28 U.S.C. § 1367(a).

The Court also has personal jurisdiction over Defendants. First, Kirat expressly waived any challenge to personal jurisdiction through the Stipulation it entered, and the Court Ordered, with Plaintiff.[4] (*See* Stip. & Order ¶ 4 ("[Kirat] waive[d] service of process and personal jurisdiction defenses.")); *Petrowski v. Hawkeye-Sec. Ins. Co.*, 350 U.S. 495, 496 (1956) (noting that "respondent, by its stipulation, waived any right to assert a lack of personal jurisdiction"); *Ins. Corp. of Ire., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such

---

[4] The Court also has personal jurisdiction over Kirat because it is a New Jersey corporation that does business in the State. (Compl. ¶¶ 10-11); *see Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" (alterations in original) (citation omitted)).

rights, be waived."). Second, the Court has personal jurisdiction over Berkshire because it is a New Jersey corporation with its principal place of business in Princeton, New Jersey. (Compl. ¶¶ 17, 18); *see Daimler*, 571 U.S. at 137. Third, the Court has personal jurisdiction over Singh, who is a resident of Wyckoff, New Jersey. (Compl. ¶ 25); *see Daimler*, 571 U.S. at 137 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]").

**B. Proper Service**

Next, the Court must determine if Defendants were properly served. *See Gold Kist*, 756 F.2d at 19 ("A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside." (citing Fed. R. Civ. P. 60(b)(4))). Here, the Court finds that Defendants were properly served.

First, Kirat waived service through the Stipulation it entered with Plaintiff. (*See* Stip. & Order ¶ 4 ("[Kirat] waives service of process and personal jurisdiction defenses."); *see S-Platform, LLC v. RPM Express, Inc.*, No. 23-21480, 2026 WL 92871, at *6 n.3 (D.N.J. Jan. 13, 2026) (finding that the plaintiff was "not required to demonstrate either sufficient process or service of process" because the defendant had waived those defenses).

Second, the record establishes proper service on Berkshire. A corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). On January 28, 2025, Berkshire was served a copy of the Summons and Complaint at its New Jersey business address through an individual whom the Affidavit of Service identifies as Berkshire's manager and who verbally confirmed that he was authorized to accept service on Berkshire's behalf. (*See* Berkshire Aff. of Service, ECF No. 3.) Service on Berkshire therefore complied with Rule 4(h)(1)(B). *See Herrera v. Quality Chevrolet GMC of*

*Englewood, Inc.*, No. 24-8536, 2025 WL 1793333, at *3 (D.N.J. June 30, 2025) (finding service proper where the summons and complaint were left with a manager of a corporation who orally confirmed authorization to accept service).

Finally, the record establishes proper service on Singh. Rule 4(e)(2)(B) permits service on an individual by "leaving a copy of [both the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there [.]" Fed. R. Civ. P. 4(e)(2)(B). On February 7, 2025, Singh was served at his residence by leaving a copy of the summons and complaint with his wife, a competent adult household member who resided there. (*See* Singh Aff. of Service, ECF No. 6.) Service on Singh therefore complied with Rule 4(e)(2)(B). *See United States v. Holohan*, No. 11-4017, 2012 WL 2339755, at *9 (D.N.J. June 18, 2012) (finding service proper where the summons and complaint were left at the defendant's dwelling with his adult wife).

**C. Plaintiff's Causes of Action**

The Court must next determine whether "the unchallenged facts" alleged in the Complaint establish a "legitimate cause of action[.]" *Chanel*, 558 F. Supp. 2d at 536 (citations omitted). Here, the Court finds that Plaintiff has pleaded viable claims under the FLSA and NJWHL.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Singh v. A&H Logistics Corp.*, No. 23-4386, 2024 WL 4880312, at *3 (D.N.J. Nov. 22, 2024) (quoting *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014)). "Generally, an employer must pay its employees at least a specified minimum wage for work performed, 29 U.S.C. § 206, and must pay one and one-half times the employer's regular wage for hours worked in excess of forty hours per week, [29 U.S.C.] § 207." *Davis*, 765 F.3d at 241. "Employers who violate these provisions are 'liable to the employee . . . affected in

the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Id.* (quoting 29 U.S.C. § 216(b)). "The FLSA affords aggrieved employees the right to recover attorney's fees and costs from their employer for violating the statute." *Singh*, 2024 WL 4880312, at *3 (citing 29 U.S.C. § 216(b)). To state an FLSA claim, a plaintiff must allege that: "(1) the plaintiff was an 'employee,' as defined by the FLSA; (2) the defendant[s] [were] 'engaged in commerce,' as defined by the FLSA; and (3) the plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week." *Logan v. Victory Ent., Inc.*, No. 18-17129, 2021 WL 912814, at *3 (D.N.J. Mar. 10, 2021) (citations omitted). "The NJWHL is interpreted similarly to the FLSA and provides a parallel cause of action for nonpayment of New Jersey's state minimum wage or overtime compensation." *Morales v. Aqua Pazza LLC*, No. 20-6690, 2022 WL 1718050, at *3 (D.N.J. May 27, 2022) (citations omitted); *Singh*, 2024 WL 4880312, at *3 ("NJWHL is New Jersey's counterpart to the FLSA." (citing *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014))).

Beginning with the first element, an "employee" under the FLSA and NJWHL is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); N.J. Stat. Ann. § 34:11-56a1(h). Moreover, an "employer" is defined to include "any person [or individual] acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d); N.J. Stat. Ann. § 34:11-56a1(g). "A 'single individual may stand in the relation of an employee to two or more employers at the same time.'" *Morales*, 2022 WL 1718050, at *3 (quoting *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012)). "'[W]here two or more employers exert significant control over the same employee[],' such that 'they share or co-determine those matters governing essential terms and conditions of

employment—they constitute "joint employers" under the FLSA.'" *Id.* (alteration in original) (quoting *In re Enter.*, 683 F.3d at 468). In determining whether a defendant qualifies as an employer, courts consider:

> [(1)] the alleged employer's authority to hire and fire the relevant employees; [(2)] the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; [(3)] the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and [(4)] the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*In re Enter.*, 683 F.3d at 469.

Here, Plaintiff alleges that he worked for Defendants at their gas station businesses from approximately November 1, 2022, through September 30, 2024. (Compl. ¶¶ 7, 10, 17, 24, 41.) Plaintiff further alleges that Singh owned the Corporate Defendants, hired Plaintiff, determined his rate and method of payment, set his work schedule, supervised his work, maintained payroll records, and possessed the authority to terminate him. (*Id.* ¶¶ 24, 26-28.) Accepting these well-pleaded allegations as true, Plaintiff has sufficiently alleged that he was an employee and that Kirat, Berkshire, and Singh were his joint employers within the meaning of the FLSA. *See Ajanel v. JC HVAC LLC*, No. 24-2150, 2025 WL 1671318, at *2-3 (D.N.J. June 12, 2025) (finding plaintiff was an employee under the FLSA when he alleged that the individual defendant, in "'the day to day management of the [c]orporate [d]efendant[s],' managed 'the payment of wages to the [p]laintiff[,] . . . scheduling and delegation of assignments, discipline of [the] [p]laintiff, [] had the power to hire and fire employees and approve all personnel decisions, [and] was responsible for maintaining personnel records relating to [the] [p]laintiff's employment'" (fifth, sixth, seventh, tenth, and eleventh alterations in original)).

The second element requires that Plaintiff allege Defendants were "engaged in commerce." 29 U.S.C. § 207(a)(1). Here, Plaintiff alleges that Corporate Defendants, owned by Singh, are gas station businesses that operate twenty-four hours a day and operate in interstate commerce. (Compl. ¶¶ 10, 12, 17, 19, 24, 38.) These allegations are sufficient. *See, e.g.*, *Singh*, 2024 WL 4880312, at *4 (finding second element satisfied where plaintiff alleged that defendant "operates in interstate commerce").

The third element requires that Plaintiff allege Defendants failed to pay him the required wages and/or overtime compensation. *See* 29 U.S.C. §§ 206(a), 207(a)(1). Here, Plaintiff alleges that: (1) he regularly worked approximately eighty-five hours per week, from approximately 7:00 a.m. to 8:00 p.m. Monday through Friday and 10:00 a.m. to 8:00 p.m. on Saturday and Sunday (Compl. ¶ 48); (2) Defendants paid him a fixed weekly amount of approximately $1,190.20, regardless of the number of hours he worked, and did not pay him one and one-half times his regular rate for hours worked in excess of forty per week *(id.* ¶¶ 49-53); and (3) Defendants otherwise failed to pay him the minimum wage to which he was entitled (*id.* ¶ 79, 95). The allegations are sufficient. *See, e.g.*, *Singh v. BNO Serv. Station, LLC*, No. 23-4196, 2025 WL 1904493, at *4-5 (D.N.J. July 10, 2025) (finding that a gas station attendant's allegation that he regularly worked more than forty hours without receiving the required overtime rate was sufficient to plead claims under the FLSA and NJWHL).

Having found that Plaintiff has adequately alleged a claim under both the FLSA and NJWHL, the Court next turns to whether default judgment is appropriate here.

**D. Default Judgment Factors**

Lastly, the Court must determine whether entry of default judgment is appropriate by considering three factors: "(1) prejudice to the plaintiff if default is denied[;] (2) whether the

defendant[s] appear[] to have a litigable defense[;] and (3) whether defendant[s'] delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted); *Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003). The Court examines each factor in turn.

*First*, Plaintiff would suffer prejudice if default judgment were denied. "When a defendant fails to respond to a plaintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate his . . . claims." *United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8, 2016) (citation omitted); *see also Slaughter v. Moya*, No. 17-6767, 2018 WL 3742622, at *3 (D.N.J. Aug. 7, 2018) ("[B]ecause [d]efendant has failed to appear, [p]laintiffs suffer prejudice if they do not receive a default judgment because they have no other means of vindicating their claim.").

*Second*, nothing in the record suggests that Defendants possess a litigable defense. Defendants have neither answered the Complaint nor opposed the present motion, and therefore have not identified any facts or legal arguments that could provide a meritorious defense. *See, e.g.*, *Chef's Warehouse Mid-Atl., LLC v. Bayou Boys LLC*, No. 25-721, 2025 WL 2535617, at *3 (E.D. Pa. Sep. 3, 2025) ("[I]t is well established that when a party does not answer or otherwise respond to the complaint, the Court may presume that it has 'no meritorious defense.'" (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014))); *Malibu Media, LLC v. Ramiscal*, No. 14-7517, 2016 WL 8698533, at *4 (D.N.J. Feb. 19, 2016) ("[T]he Court may presume that a defendant who has failed to plead, defend, or appear has no meritorious defense.").

*Third*, Defendants' failure to answer, move, or otherwise defend this action "permit[] the Court to draw an inference of culpability on their part." *JUUL Labs, Inc. v. Zoey Trading LLC*, No. 21-19299, 2022 WL 970412, at *6 (D.N.J. Mar. 31, 2022).

Because all three factors weigh in Plaintiff's favor, the Court finds that entry of default judgment against Defendants is appropriate. *See Joe Hand Promotions, Inc. v. Waldron*, No. 11-849, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013) (finding that factors weighed in favor of default judgment where there was no indication of a cognizable defense to plaintiff's claims, plaintiff had no alternative means of vindicating its claim, and defendants failed entirely to respond).

**E. Damages**

What is left for the Court is the proper remedy. While the factual allegations of the complaint "will be taken as true" on a motion for default judgment, the amount of damages must still be proven with certainty. *Corbin*, 908 F.2d at 1149. Courts have "considerable latitude in determining the amount of damages[.]" *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016) (citation omitted). Moreover, while the Court may conduct a hearing to determine the amount of damages pursuant to Rule 55(b), a hearing may not be necessary "so long as [the Court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Id.* (second and third alterations in original) (quotation marks and citation omitted). The Court thus refers this matter to Magistrate Judge Quinn for further determination of damages. *See* Fed. R. Civ. P. 55(b)(2) (providing that the Court may "conduct hearings or make referrals" to, among other things, "determine the amount of damages"). Plaintiff shall supplement its motion to include any additional documentary support, addressed to Judge Quinn, that justifies

the damages sought with respect to his claims. After reviewing this submission, Judge Quinn shall determine if an evidentiary hearing is necessary.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Default Judgment is granted. The determination of damages shall be referred to Judge Quinn. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

DATED: 8/10/, 2026